# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN E. MEINEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:09-cv-00835-TWP-DML |
| ) | |
| BEST BUY STORES, L.P. ) | |
| ) | |
| ) | |
| Defendant. | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Best Buy Stores, L.P.'s ("Defendant" or "Best Buy") Motion for Summary Judgment [Dkt. 34]. Plaintiff John E. Meinen ("Plaintiff") filed suit in this Court alleging that his termination violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment [Dkt. 34].

## I. BACKGROUND

Plaintiff was born on January 27, 1963, making him forty-five years old at the time of his termination by Defendant. Meinen Dep. at 9–10. Plaintiff was employed as a General Manager at Defendant's Store Number 490, located at 14610 N. Meridian Street, Westfield, Indiana, from January 23, 2005 to May 2, 2008. *Id.* at 31–36. As General Manager, Plaintiff oversaw all of Defendant's operations in that store, directly supervising four managers and indirectly supervising nearly 100 employees. *Id.* at 34–35. During his time with Defendant, Plaintiff was supervised by two District Managers. He was initially supervised by Bill Beverly ("Beverly"),

who was then replaced by Harvey Bannister ("Bannister") in March 2008. *Id.* at 69. Plaintiff received a number of satisfactory performance evaluations, and Beverly admits that Plaintiff's store performed well. Beverly Dep. at 20, 22. As part of his General Manager duties, Plaintiff was familiar with Defendant's policies and where to find them, and he consulted them when concerns regarding policy compliance arose with his subordinates. Meinen Dep. at 41–43, 54–56, 62. Prior to this action, Plaintiff had not complained of age discrimination to anyone at Best Buy. *Id.* at 109, 142.

### A. *Investigation for Return Policy Violations*

In April of 2008, Area Asset Protection Manager Jason Ditkowsky ("Ditkowsky") received a tip that Plaintiff attempted to return a multi-switch to Best Buy and obtain a refund in violation of the Best Buy Return and Exchange Policy ("Return Policy"). According to the tip, on March 31, 2008, Plaintiff engaged Solutions Specialist Crystal Bilke ("Bilke") and Operations Supervisor Amanda Castleberry ("Castleberry") to process a return for him without a receipt. Bilke Aff. ¶ 6; Castleberry Aff. ¶ 8; Meinen Dep. at 113–14. Both Bilke and Castleberry unsuccessfully attempted to locate the receipt in Defendant's internal database. Bilke Aff. ¶¶ 6–7; Castleberry Aff.¶ 7. There was no evidence that Plaintiff purchased the multi-switch at Best Buy. Ditkowsky Dep. at 51–52. Despite company policy requiring either a receipt or location of a receipt in the database, Plaintiff reportedly insisted that Castleberry process his return. Castleberry Aff. ¶¶ 10–11. Plaintiff received a refund for the multi-switch's full price even though he would have purchased it with his employee discount. Bilke Aff. ¶ 10; Castleberry Aff. ¶ 9. Plaintiff denies that Bilke was involved in the transaction. Meinen Dep. at 113–14, 116.

Upon further investigation, Ditkowsky concluded that the tip had merit. He also found that, on June 25, 2007, Plaintiff engaged Store Services Manager Mitchell Page ("Page") to process another return for him without a receipt. Meinen Dep. at 79–80, 118–20; Ditkowsky Dep. at 21. In that case, Plaintiff sought to return a network adapter, and a receipt was found in the internal database for this item. Ditkowsky Dep. Ex. A. Once again, however, Plaintiff was given store credit in an amount higher than the cost of the product with his employee discount. Ditkowsky Dep. at 22. The investigation of both returns was undertaken without interviewing Plaintiff. *Id.* at 47–48. Plaintiff acknowledges that both returns took place. Meinen Dep. at 77–78; Meinen Dep. Ex. 24.

B.   *Termination of Plaintiff's Employment*

Ditkowsky referred the information gained in the investigation to Accenture, Defendant's outside human resources ("HR") consulting agency, for a recommendation regarding possible disciplinary action. Pellicano Aff. ¶¶ 6–7. Jennifer Lynn Pellicano ("Pellicano") of Accenture reviewed the materials and recommended termination of Plaintiff's employment. *Id.* at ¶ 9. Pellicano drafted an involuntary separation letter and sent it to Ditkowsky. *Id.* at ¶ 10 & Ex. F.

On April 24, 2008, Plaintiff had a performance review with Bannister, his supervisor. Meinen Dep. Ex. 18. Upon leaving the performance review, Plaintiff was called into an office to meet with Ditkowsky and witness Rueben Murphy ("Murphy"). They proceeded to discuss the two improper returns. Meinen Dep. at 74-84; Ditkowsky Dep. at 21-24. At this meeting, Meinen made a written statement and Meinen was then informed that he was being suspended for possible violations of the Return Policy and that he was not to return to work Meinen Dep. at 84-

86.

On April 28, 2008, Ditkowsky and Terry Sayre ("Sayre") met with Plaintiff and presented Plaintiff with his involuntary separation notice. Meinen Dep. at 96–105. Bannister was not present at this meeting, but he previously agreed with the recommendation to terminate Plaintiff's employment. Bannister Dep. at 69. Plaintiff became irate and demanded to know why Bannister was not present, requesting to speak with him about the decision. Meinen Dep. at 104. Plaintiff refused to sign the involuntary separation notice. *Id.* at 107. Ditkowsky indicated that Plaintiff could return the following Tuesday and speak with Bannister. Meinen Dep. at 106–08, 127–28. On May 2, 2008, Bannister confirmed the termination decision in the follow up meeting with Plaintiff and Sayre. Bannister Dep. at 38. Upon termination, Sales Manager Damien Heine ("Heine") was promoted to Plaintiff's General Manager position. Heine Dep. at 22. Heine was thirty-three years old when he was promoted. *Id.*

C. *Treatment of Other Employees Violating Company Policy*

As part of his claim, Plaintiff contends that before his termination, at least three other Best Buy managers were disciplined for violations of company policy, and none of these employees were terminated on their first offense. These employees, all Plaintiff's subordinates at the Westfield Store, were Operations Manager Tamika Leibig ("Leibig"), Page, and Heine. All three employees were younger than Plaintiff. Meinen Dep. at 72.

According to Plaintiff, Leibig received a pay advance and paid it back untimely. Meinen Dep. at 146–47. Leibig was not disciplined. *Id.* Defendant contends that Plaintiff reported Leibig's policy violations and subsequently communicated that the matter had been handled

4

internally and further disciplinary action was unnecessary. Bryant Aff. ¶ 11.

On April 16, 2008, Plaintiff contacted Defendant's HR hotline to report that Page had discounted products without approval. *Id.* Page was issued a Final Warning for this conduct and advised to partner with the General Manager on future non-compliant transactions. Meinen Dep. at 138. On April 28, 2008, following the Final Warning, Page was terminated for violating the Return Policy. *Id.*; Bryant Aff. ¶ 11. Page allegedly returned two memory sticks without receipts, at least one of which had not been purchased at Best Buy. Bryant Aff. ¶ 11.

In September of 2007, Heine was disciplined for engaging in a sexual relationship with a subordinate employee. Heine Dep. at 10. He received a Final Warning as a result of this conduct. *Id.* When Heine was interviewed for the General Manager position following Plaintiff's termination, the September 2007 discipline never was discussed. *Id.* at 16. Heine subsequently was promoted to Plaintiff's former position. *Id.* at 22.

### D. *Allegations of Age Discrimination*

On September 11, 2008, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that his termination resulted from age discrimination. Compl. Ex. A. On April 9, 2009, the EEOC gave Plaintiff a Notice of Right to Sue. Compl. Ex. B. On July 6, 2009, Plaintiff brought suit in this Court, alleging violations of the ADEA and seeking damages. Compl. On May 20, 2010, Defendant filed a Motion for Summary Judgment, contending that Plaintiff cannot prove that age discrimination caused his termination.

The Court adds additional facts below as needed.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56© provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  Summary judgment must be based on admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490.  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim."  *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).  Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997).

## III.  DISCUSSION

### A.    *Plaintiff's Motion to Strike*

In his response to the Motion for Summary Judgment, Plaintiff asserts that two of

6

Defendant's exhibits, both used during Plaintiff's deposition, should be stricken and should not be considered for purposes of summary judgment. Plaintiff claims that the Employee Code of Conduct was not produced to him during discovery and, therefore, is inadmissible. Resp. at 2. Defendant's counsel avers that the Employee Code of Conduct was produced to Plaintiff on January 15, 2010, in response to Plaintiff's First Request for Production of Documents. Reply at 9. The Court is satisfied that Defendant produced the Employee Code of Conduct during discovery and, therefore, declines to strike this document.

Plaintiff also seeks to strike the Return Policy as irrelevant because its effective date, April 4, 2008, occurred after his alleged violations of the policy. Resp. at 2. However, Plaintiff admitted in his deposition that the document used was an accurate copy of the Return Policy that was in effect during his employment. Meinen Dep. at 54–55. Because Defendant's given reason for termination involves violation of the Return Policy, the Return Policy unquestionably is relevant. Therefore, the Court also declines to strike the Return Policy.

### B.      *Plaintiff's Age Discrimination Claim*

### 1.      **The ADEA Generally**

The ADEA prohibits an employer from discharging an individual because of his age. 29 U.S.C. § 623(a)(1) (2010). To establish a claim under the ADEA, the plaintiff must show that age "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)). Unlike claims under of race or gender discrimination, age discrimination claims may not be proven under a

mixed-motive analysis. *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct 2343, 2350 (2009). Instead, "the plaintiff must prove that age was the 'but-for' case of the employer's adverse decision." *Id.*

A plaintiff can attempt to demonstrate discrimination through either direct or indirect proof. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). "Direct" proof includes both "near-admissions" by the employer and "circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." *Hemsworth*, 476 F.3d at 490. Direct evidence has been characterized as "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Hill v. Burrell Commc'ns Grp.*, 67 F.3d 665, 667 (7th Cir. 1995). Plaintiff tacitly admits that the facts of this case are insufficient to conclude that there is direct proof of discrimination. Resp. at 15. Therefore, to prevail on his ADEA claim, Plaintiff must establish age discrimination using indirect proof under the burden-shifting analysis from *McDonald Douglas v. Green*, 411 U.S. 792 (1973). *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006). To survive summary judgment under the burden shifting method, Plaintiff must produce sufficient evidence "to create a triable issue of fact" on all elements on which he bears the burden. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 472 (7th Cir. 2002).

**2.** ***McDonald Douglas*** **Analysis**

Under the *McDonald Douglas* framework, Plaintiff first must establish a *prima facie* case of age discrimination by showing that (1) he was a member of the protected age group of persons forty or older, (2) he was performing his job satisfactorily, (3) he was discharged, and (4) similarly situated "substantially younger" employees were treated more favorably. *Hoffman v.*

*Primedia Special Interest Publ'ns.*, 217 F.3d 522, 524 (7th Cir. 2000). If the plaintiff establishes all elements of the *prima facie* case, the burden shifts to the employer to articulate a non-discriminatory reason for the employee's termination. *Id.* The plaintiff then may seek to show that the purported reason for termination is "false and only a pretext for discrimination." *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008).

**a.** *Prima Facie* **Case**

If Plaintiff fails to establish any element of the *prima facie* case, Defendant is entitled to summary judgment as a matter of law. *See Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675 (7th Cir. 2003). Plaintiff clearly has satisfied two of the required *McDonald Douglas* elements: he was forty-five years old, and his employment was terminated by Defendant. Mienen Dep. at 10. However, Defendant contends that Plaintiff fails to establish a *prima facie* case because he cannot show that he was performing his job satisfactorily or that substantially younger employees were treated more favorably. The Court addresses these contentions in turn.

The second prong of the *McDonald Douglas* framework requires that Plaintiff prove that he was meeting Defendant's legitimate expectations of job performance. *Ritter v. Hill'N Dale Farm, Inc.*, 231 F.3d 1039, 1043 (7th Cir. 2000). To qualify as legitimate expectations, the expectations must be objectively reasonable and communicated to the employee. *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 463 (7th Cir. 1986). In evaluating this prong, "[i]t is the perception of the decision maker which is relevant" rather than the employee's subjective view of his own job performance. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337–38 (7th Cir.

9

1991). Defendant contends that Plaintiff's misconduct necessitates a finding that he was not performing his job in line with Defendant's legitimate expectations that employees not engage in violations of company policy. Plaintiff counters that, prior to his termination, his performance evaluations were consistently positive, and his former supervisor gave him a positive recommendation following his termination. Meinen Dep. Ex. 18; Beverly Dep. Ex. D. Contrary to Defendant's assertion, infrequent violation of company policy alone is not *per se* evidence that Plaintiff failed to conform to Defendant's legitimate expectations. *Cf. Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 452 (7th Cir. 1998) (noting claimant's repeated performance issues). Viewing the evidence in the light most favorable to Plaintiff, the nonmoving party, the Court finds a genuine issue of material fact exists as to whether Plaintiff was performing his job according to Defendant's expectations. *See Lesch*, 282 F.3d at 472.

Turning to the fourth prong of the *McDonald Douglas* analysis, Plaintiff must show that substantially younger employees were treated more favorably and that those employees were similarly situated to Plaintiff in all but age. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001). Plaintiff contends that this prong may be proven in two ways: (1) by showing that he was let go and replaced by someone substantially younger or (2) by showing specific employees who were similarly situated, substantially younger, and more favorably treated. Defendant counters that only the second method—showing specific similarly situated, substantially younger employees whose treatment was more favorable—is permissible. Under *Hoffmann*, "where a single employee is let go and another individual is hired instead, the fourth requirement [of the *McDonald Douglas* analysis] means showing that the discharged worker was replaced with someone substantially younger." 217 F.3d at 524. An age difference of ten years

or more is presumptively substantial. *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997). In this case, Plaintiff was forty-five years old when he was terminated, and Heine, his replacement, was thirty-three years old. Meinen Dep. at 10; Heine Dep. at 22. In other words, Plaintiff's replacement was twelve years younger than himself. In accordance with *Hoffmann*, the Court concludes that Plaintiff has demonstrated a genuine issue of material fact as to the fourth prong of the *McDonald Douglas* analysis. *See Lesch*, 282 F.3d at 472; *see also Reynolds v. Arvinmeritor, Inc.*, No. 02-1039, 2003 WL 23220760, *9 (S.D. Ind. Nov. 13, 2003) (concluding that evidence of replacement with a substantially younger employee sufficient to establish fourth prong at summary judgment stage).

Because Plaintiff has created a genuine issue of material fact as to each element of the *prima facie* case, the burden shifts to Defendant to articulate a non-discriminatory reason for Plaintiff's termination. *Hoffmann*, 217 F.3d at 524.

b.   **Non-Discriminatory Reason for Termination and Pretext**

To satisfy its burden to demonstrate a non-discriminatory reason for Plaintiff's termination, Defendant need only "produce a legitimate, noninvidious reason for its actions." *Atanus*, 520 F.3d at 672. The Court has little trouble concluding that Defendant's proffered reason for Plaintiff's termination—violation of the Return Policy—satisfies this burden. Bannister Dep. at 69; Pellicano Aff. ¶ 11. Because Defendant has demonstrated a non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to prove that Defendant's proffered reason is mere pretext for age discrimination. *Atanus*, 520 F.3d at 672.

After the employer has articulated a non-discriminatory basis for termination, the

employee must provide sufficient evidence tending to prove that "the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Schuster*, 327 F.3d at 574–75. Since an ADEA claim requires intentional age discrimination, "the pretext inquiry focuses on whether the employer's stated reason was honest, not whether is was accurate." *Helland v. S. Bend Cmty. Sch. Corp.*, 93 F.3d 327, 330 (7th Cir. 1996). "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment." *Zaccagnini*, 338 F.3d at 627. In this case, Plaintiff has conceded that Defendant's reason for termination—violation of the Return Policy—is factually accurate. However, he contends that termination was too severe a punishment for his conduct and that younger employees engaged in violations of company policy were not terminated.

Plaintiff points to several factors he argues support a finding of pretext. First, he argues that Defendant did not adequately apprise him of its expectations with regards to the Code of Conduct and the Return Policy. The Court concludes that this argument is without merit. Although the Return Policy changed after Plaintiff's infractions, *see* Meinen Dep. at 54, the parties agree that at no time did the Return Policy allow an employee to obtain a larger refund than the price paid for an item or to receive refunds for items not purchased from Defendant. In addition, Plaintiff admits that all relevant policies were available for his review on Defendant's website and that he could consult those policies. Meinen Dep. at 41–43, 54–56, 62.

Plaintiff also contends that Defendant conducted no substantive investigation of his conduct before deciding to terminate his employment. This conclusory argument is easily rebuffed by Defendant's evidence showing that Defendant, both through its loss prevention team

and through Accenture, reviewed statements and receipts documenting Plaintiff's alleged conduct. *See generally* Ditkowsky Dep.; Pellicano Aff.; Bryant Aff. Although Ditkowsky admitted that Defendant does not "actively look for and seek out violations of company policy," Ditkowsky Dep. at 16–17, this statement does not support Plaintiff's implied argument that Defendant did not investigate allegations of employee misconduct brought to its attention. Plaintiff's allegation of lack of investigation lacks merit.

Also easily disposed of is Plaintiff's argument that doubts expressed by Murphy, Ditkowsky, and Bannister as to the truth of the allegations against Plaintiff and the severity of punishment have any bearing on the reasonableness of Defendant's termination decision. Plaintiff correctly points out that Ditkowsky asked Accenture consultants whether a Final Warning or termination was appropriate. Ditkowsky Dep. Ex. E. Prior to making the final decision, Bannister sent an email to Ditkowsky expressing some doubt as to whether Plaintiff's violations were honest mistakes. Bannister Dep. Ex. J. However, neither Ditkowsky's or Bannister's doubts establish that punishment was unwarranted or overly severe. In fact, Plaintiff signed a statement upon beginning employment with Defendant acknowledging that the punishment for violation of company policy could be as severe as termination. Meinen Dep. Ex. 5–6, 16. Murphy's statement that "we must be missing something," Ditkowsky Dep. Ex. F, is completely irrelevant in this regard, as the evidence provides no context for that statement and there is no evidence that Murphy expressed any doubt as to Plaintiff's termination with that statement. In short, doubts during an investigation do not lead to the conclusion that the end result is somehow flawed, and, in any event, Plaintiff has brought forth no evidence that these doubts persisted.

However, Plaintiff's argument regarding disparate treatment of substantially younger, similarly situated individuals warrants further consideration. Although, as discussed above, this evidence is not necessary to prove the *prima facie* case, it unquestionably is relevant to the existence of pretext. *See Brown v. M&M/Mars*, 883 F.2d 505, 511 (7th Cir. 1989) (more favorable treatment of employees outside protected group can provide support for claim of pretext). As evidence of more favorable treatment to similarly situated, substantially younger employees, Plaintiff draws the Court's attention to three employees: Leibei, Heine, and Page. All three employees committed violations of company policy and were not terminated on their first offense.

The Court easily concludes that Leibei and Heine are not similarly situated to Plaintiff because both of their violations involved company policies not at issue in Plaintiff's case. Leibei, who violated company policy by failing to timely return funds from a pay advance, received no discipline whatsoever, and there is no evidence that any disciplinary investigation was undertaken. Meinen Dep. at 145–52. Leibei's violation was not comparable; nor was her violation investigated. Heine, the employee who was promoted to Plaintiff's position following Plaintiff's termination, had previously been given a Final Warning for an inappropriate relationship with a cashier. Heine Dep. at 10. Like Leibig, Heine's violation involved a company policy irrelevant to this case.

However, Page's case is closer to Plaintiff's. Page was given a Final Warning after improperly marking down prices and then purchasing items at those new prices. Meinen Dep. at 131–32. After a violation of the Return Policy following the Final Warning, Page's employment was terminated. Page Dep. at 13–14. It is true that Page's first violation, for which he received

a Final Warning, is factually close to Plaintiff's violation. However, the fact that Page was Plaintiff's subordinate precludes a finding that Page and Plaintiff are similarly situated. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Defendant is entitled to hold General Managers to higher standards than their subordinates, and Plaintiff has not brought forth any evidence suggesting these higher standards had anything to do with Plaintiff's age. In short, the Court concludes that neither Leibig, Heine, nor Page is similarly situated to Plaintiff.

Even looking at the evidence in the light most favorable to Plaintiff, the Court cannot conclude that a genuine issue of material fact exists. Plaintiff bears the burden of introducing evidence that Defendant's proffered reason for his termination is pretext for age discrimination. *Brown*, 883 F.2d at 510; *see also Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir. 1987). Plaintiff agrees that he violated the Return Policy, and documents signed by Plaintiff acknowledge that violation of company policy, including the Return Policy, could result in termination. Meinen Dep. Ex. 5–6, 16. The evidence suggests that other employees, who were not similarly situated but engaged in the same policy violations as Plaintiff, were terminated just as Plaintiff was terminated. *See* Meinen Dep. at 137–38 (discussing Page's policy violations). Defendant was free to fire Plaintiff, an at-will employee, for any non-discriminatory reason. *See Kohl's v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 805 (7th Cir 2001). Plaintiff has not brought forth evidence such that a fact-finder could find Defendant's explanation was merely pretext for age discrimination. Simply stated, Plaintiffs termination was for a lawful non-discriminatory business decision; it is reasonable to terminate a store manager who violates the Return Policy in the manner admitted by Plaintiff.

## IV. CONCLUSION

For the reasons noted herein, Defendant's Motion for Summary Judgment [Dkt. 34] is **GRANTED**. A separate judgment shall enter in favor of Best Buy.

SO ORDERED: 12/08/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**Thomas E. Deer**
OGLETREE DEAKINS
thomas.deer@ogletreedeakins.com,bertha.castro@ogletreedeakins.com,deanna.isenthal@ogletreedeakins.com

**Dorothy D. Parson**
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
dorothy.parson@odnss.com,ben.rogers@odnss.com,quenay.mills@odnss.com,jim.cangany@odnss.com,denise.simpson@odnss.com

**Steven Sams**
STEVEN SAMS, P.C.
stevensamslaw@att.net